## Haines's Appeal.

Evidence that the obligee in a bond was in needy circumstances and depended upon the interest of the bond for support; that the obligor was at all times able to pay the interest, and did pay the obligee money whenever she needed it,—*Held*, sufficient to prove that the interest on the bond was fully paid.

(Decided March 1, 1886.)

Appeal from a decree of the Orphans' Court of Lehigh County. Affirmed.

Mary Hess died testate, leaving to survive her, three children, James Hess, Juliann Haines, intermarried with Lucas Haines, and Emeline Mertz, widow. James Hess was her executor, having died without filing his account. Annetta P. and Robt. J. Hess, his administrators, filed their account. Levi Schmoyer was appointed auditor, to audit, resettle, and make distribution.

Among the assets inventoried in this estate was a bond with warrant of attorney, dated October 19, 1841, for $700, the interest payable annually to Mary Hess, and after her death to her children, James Hess, Juliann Haines, and Emeline Mertz. This bond and warrant was executed by James Hess under his hand and seal, and on the back of it was indorsed in the handwriting of James Hess: "Received, Allentown, April 1, 1862, of James Hess, $462, in full for interest due above date."

This receipt is not signed.

Before the auditor, Emeline Mertz and Juliann Haines, as heirs and legatees of said Mary Hess, appeared and asked that the accountant be surcharged with interest from the date of the receipt, to wit, April 1, 1862, to December 29, 1884, the day of filing this account.

The auditor allowed interest on this bond from April 1, 1877, to September 1, 1885. The court below, reversing the auditor, allowed interest on the bond from April 1, 1883, to December 18, 1883.

This question of surcharge of interest is the controversy raised by this appeal.

The following is an extract from the opinion of the court below:

"Mary Hess, the decedent, died November 9, 1883. She was in the eighty-ninth year of her age at the time of her decease. She left surviving her, issue, three children, a son, James, whom she appointed executor of her will made in 1875, and two daughters, Mrs. Mertz and Mrs. Haines. She devised a dwelling house, the only real estate she owned at the time of the making of the will, to the two daughters and gave her personal estate to her three children in equal shares. James, the executor, filed an inventory, taken December 18, 1883.

"The property inventoried consists of a few articles of furniture and a note of James Hess dated April 1, 1882, to his mother for $1,800, upon which interest from April 1, 1883, to December 18, 1883, is charged, and a bond by said James, dated October 19, 1841, for $700. Upon the bond, interest is inventoried as due from April 1, 1883, to December 18, 1883. Said bond is conditioned for the payment to said Mary Hess, widow of John Hess, of the interest on the $700 annually from date during her lifetime, and at her decease the $700 to the legal heirs of said John Hess, of whom it is mentioned in said condition that said James was one.

"It is apparent that the principal of said bond is no part of the estate of the testatrix. On the argument of these exceptions counsel for all the parties interested signed an agreement, appended hereto, stipulating that it shall be treated as though it were one of the assets of the estate, and as though the principal were payable to Mary Hess. There is no reason why the wishes of all concerned should not be regarded; it will be treated as part of testatrix's estate.

"James Hess died after the taking of said inventory. The account in this estate, filed December 30, 1884, was settled by his administratrix.

"Mary Hess resided at Allentown, and her widowed daughter, Mrs. Mertz, and her children lived with her. Her son, James, resided at Easton, was in active business and was possessed of considerable means.

"Counsel for accountant offered in evidence before the auditor the books of accounts of James Hess, deceased, and cal-

culations made by him to show the nature of the transactions
between Mrs. Hess and James, and that he owed her nothing but
said $700 bond of 1841, and $2,700 consideration money for
the land, and how he paid to her from time to time and upon
what account; that by certain payments and transactions said
$2,700 was reduced to $1,800, for which the note was finally
given; said books were also offered to rebut the theory that
James held the title to or the proceeds of the sale of the lot for
his mother. The books were received in evidence.

"I cannot agree with the learned auditor that the books are
receivable in evidence, upon the offer of the party who made
them, and to prove the facts sought to be established by them.
The learned auditor concluded that the relation of Mrs. Hess
and James was that of principal and agent; that she intrusted
her money to him, and that he supplied her with small sums
as she needed it, and attended to and paid for matters relating
to her property. Upon an examination of the cases cited by the
auditor, I conclude that they do not support his position.

"Among the strongest is that of Ege's Appeal, 2 Watts, 283.
There it was held that a son, who had been a manager of iron
works for his father in his lifetime, and who, after his death,
became his administrator, on the settlement of his administra-
tion account, was entitled to credit for a sum in his favor on the
cash book. But, as the court said, those were the books of the
employer, the owner of the works, and open to his inspection,
and that the presumption was that he did inspect them and was
satisfied with their correctness. So in the case of Himes v.
Barnitz, 8 Watts, 39, also relied on by the auditor. There
entries in a book of payments made for another were received
in evidence, because accompanied by proof that the person to
be affected had constant access to the books and assented to the
entries.

"The books here in question were not the books of Mrs. Hess,
but the books of James, used in his business, in Easton. It
does not appear that she ever saw his books, nor that he ever
rendered her an account taken from them. The entries offered
are in the nature of declarations made by a party in his own
favor in the absence of the party to be affected. If the books
were received, their principal effect would be to prove that the
party who made the entries therein discharged a debt, because
he made entries of payments by himself in his own books which

the other party never saw, nor had the opportunity of seeing. This differs widely from Welsh v. Cooper, 8 Pa. 217, also cited by the auditor, where books of a store, the ownership of which was in dispute, were received to show that the party, whose books they purported to be, was in possession of the store, and the manner in which the business was conducted.

"As to the interest on the bond of 1841: On the bond is indorsed in the handwriting of the obligor, a receipt of April 1, 1862, for the interest in full to said date, $462. Counsel for the legatees asks that accountant be charged with interest on the bond from one year after its date (I understand that to be the claim), and that the unsigned receipt of the debtor ought to be disregarded. The thought that this demand for arrearages of interest for forty-five years might be acceded to, gives rise to the other thought, that the claimant might be met by the unrebutted presumption of payment of the annual interest.

"Mrs. Hess, for the support of herself and her descendants living with her, and who were, no doubt, in a measure dependent upon her, or to whom she probably extended aid when she could, needed all her income. Besides what she drew from James, she had but little, if any, resources to live upon. Substantially all she had that was productive was placed in the hands of her son James. He owed the $700 bond, the interest whereof was due her; the $1,800 note, and in reality the money represented by the $2,000 Deshler mortgage. Upon the income of these sums she depended for a living. James was amply able to pay at all times. It seems he paid to her whenever she needed money; oftener than the stated periods when interest fell due. An examination of the evidence as to how this mother and son dealt with each other convinces me that during at least the later years of her life he was not in arrears for interest to her. That the $1,800 note of April 1, 1882, was given for a debt which did not arise then is undoubted. It can fairly be inferred that it represented all that he owed her then. I have no doubt that Mrs. Hess so regarded it, and the evidence warrants the court in doing the same. The evidence referred to and other competent evidence in the case also convinces me that at the last April of this aged lady's life, April, 1883, her son gave her all he owed her then. All the circumstances point that way and any other conclusion would be strained and not in accordance with the facts as I believe them to be. The interest on the

bond will be taken as charged in the account. Interest ought to stop at the date of filing the account for the reasons given in the discussion of interest on the note."

*James B. Deshler* for appellant.

*Frank Reeder,* for appellees.—The lapse of any time less than twenty years will not, *per se,* raise the presumption of payment, although it may do so in the light of other circumstances. Rogers v. Burns, 27 Pa. 525; Brubaker v. Taylor, 76 Pa. 83; Moore v. Smith, 81 Pa. 182; Hobson's Estate, 14 W. N. C. 48.

To aid the presumption of payment from lapse of time, evidence of the needy circumstances of the obligee and the easy and solvent circumstances of the obligor is competent and persuasive. Hughes v. Hughes, 54 Pa. 240.

OPINION BY MR. JUSTICE STERRETT:

While it is not entirely clear that the court below was right in refusing to surcharge accountants with additional interest on the $700 bond, we are not prepared to say there was error in so doing. For the reasons given by the learned president of the orphans' court in his opinion filed, we are inclined to think the view taken by him is correct.

Decree affirmed and appeal dismissed, at the costs of the appellant.